This video was made in Cooperation with the U.S. Department of State.   Thank you for watching. Please see the complete disclaimer at https://sites.google.com or the link in the description. Please see the complete disclaimer at https://sites.google.com or the link in the description. Please see the complete disclaimer at https://sites.google.com or the link in the description. I'm going to start with addressing the denial of Murata's motion for preliminary injunction, and then I'll address the denial of its motion to lift the stay. Starting with the preliminary injunction motion. The district court committed a clear legal error when it denied Murata's preliminary injunction motion without considering any of the required four preliminary injunction factors. That decision directly contravenes this court's holding in P&G. Just as a preliminary matter, what law would you say that we're applying in this case, that of the regional circuit in which the court sits? And if so, what would you say is our standard of review? Because in that case, as in this one, the district court below denied a preliminary injunction motion on the basis of a stay of the case. There are two patents that we added. When we moved to add these two patents, there was not even a motion to stay the case at the time. We moved before there was ever a stay. The motion to stay was granted, and then as I understand it, you had moved to add your patents and you got the opportunity to add them and you went ahead and did so. Let's get the history correct, though, on this. In September of 2014, we moved to add these patents. The case was continuing at the time. Several weeks later, Daifuku moved to stay the case as to the original patents. At that time, the additional patents that we wanted to add were not in the case yet. Discovery continued on the original patents because the additional patents, again, were still not in the case. And then several months later, the district court stayed the case. The issue of the stay originally was about... I guess it did two things simultaneously, right? It granted your motion to add the additional two patents, and then at the same time, it likewise granted the other side's motion to stay the entire proceeding given the then pending petitions for IPRs on the first three patents. Correct. That's exactly right. What's the status of those three IPRs? We're anticipating a final written decision on those three patents by May 4th. So that's where we are. We're past the oral hearing at this point. Did you amend any of the claims? No. So all the IPRs, had they been instituted before the motion for a stay was submitted? Well, we have two motions relating to stays. We have the original motion to stay by Daifuku in 2014. The court later grants that motion in February 2015. In that same order, it invites Murata to move to lift the stay under appropriate circumstances after a decision on institution relating to the original patents. There's an institution decision on those three. Three of the five petitions are granted, and so IPR proceedings proceed starting in May of 2015 on the original patents, and we then move to lift the stay as to the additional patents, which have been stayed from the beginning because they were stayed as part of the rest of the case. And so we move forward with the additional patents, and in fact, indeed, to just catch up with the discovery, 10 months of discovery that had been already taken on the original patents. When you filed a motion for an injunction, were all the IPRs that we're concerned with, had they already been instituted? No. On what patents had it not been instituted? We filed our motion to lift the stay. We filed our preliminary injunction motion, and at some point, Daifuku ultimately filed petitions for IPR on the additional patents. Months later, I believe it was the beginning of this year, or late last year, the PTAB finally instituted, actually, let me correct myself, Your Honor. It was of this year. The PTAB instituted on two of the three petitions that had been filed, but left one of the claims that we've asserted in our motion for preliminary injunction untouched by any IPR review, and now that claim is completely free and clear of any IPR review going forward. This is a claim, of course, of the 184 patent that's going to expire, unfortunately, in June of next year, so we've lost almost 18 months since we originally moved to add these patents into the case, and now we're left with about 14 months left on this patent and this claim. But that institution decision occurred in January of this year, five months after the court stayed the case, and months after we moved for a preliminary injunction. At the time the district court denied your motion to lift the stay, these additional IPR petitions on the new patents were already filed and pending, and the district court relied in part on the fact that there were pending IPR petitions on those two additional patents, right? At some point after... I believe the district court order references the fact that there are pending petitions on the two additional patents, two added patents. By the time of the district court's order, I believe the petitions had been filed by DEFU. They were filed in July. Yes, and the date of the order was September. So it's within a few months, but our motion to lift the stay preceded those petitions, certainly. But your motion to lift the stay, that came after your motion to seek and provide the additional patents into the case. Well, this motion to add the additional patents had been in September of 2014. The motion to lift the stay was controlled by the district court's order, saying that we are invited to move to lift the stay after an institution decision on the original patents. When that institution decision came out, we moved to lift the stay. So that motion was filed in May, late May of 2015, so we're talking about eight months after we had moved to add those patents into the case. I want to go back for a minute to my original question about why these two patents were added, because as I understand the record, the district court has a single order in which it both granted the motion to stay and granted a motion to allow you to file an amended complaint to add the two patents. And in that, at page A9, it specifically says, if you're going to add those patents, it's going to stay the entire case. And then you went ahead and filed your first amended complaint to add the patents. Do I misunderstand that? No. Well, our understanding was we can amend the complaint and the case will be stayed. Frankly, at the time, we didn't see it as a choice now that we had to make as to whether we were going to add the patents or not. We thought that we were going to get a lift of the stay of the case when the institution decisions came out. Presumably that would be if it was an institution decision where the PTO said we're not going to institute. Instead, they said we're going to institute. We were talking about different patents now. We're talking about patents that weren't the subject of any institution decision. We're talking about an institution decision on the original patents, not the patents here. We wanted to go forward on a different set of patents, not related to the original patents at all. And it was our view that these additional patents should be allowed to proceed and catch up with discovery and everything else that had been done in the case on the original patents. There was no decision on institution relating to these patents that we wanted to add at the time. It says on page A9, the complicating issue is whether to say litigation on the new claims this court has now permitted plaintiffs to add. And then it says, accordingly at this juncture, the court will stay the entire litigation with the exception of allowing plaintiffs to properly file their first amended complaint. That being the complaint that would add the two patents. Right, which we had moved to add many months earlier. So in other words, I read this as the court saying we're going to stay the entire litigation. Right. Including those two new patents that you were going to add. That's what it was saying. It was going to stay the entire case, inviting us to move to lift the stay at the point when there was going to be an institution decision on the original patents. But do you see how the basis for staying the entire litigation actually got strengthened by the fact that the PTO actually granted the IPR petitions a few months after his initial stay order? Because now the judge really knows that these three patents are in jeopardy and he doesn't know what those patents are going to look like a year from now by the time that the IPRs are completed. And so it very well may be there's, with respect to these three patents, there's nothing left to litigate. Moreover, as a basis for agreeing to grant your motion to amend the complaint to add two additional patents, he relied on the fact that your position was that these two new patents were very similar to the three patents that were already in the litigation. And based on your arguments, your statements that those two added patents are very similar to these three patents, he was willing to allow you to amend the complaint. Therefore, whatever happens in those three IPRs could very well have impact on these two patents, which you have told the court, which you stood up and told the court that are very related. Well, we didn't view them as related in the sense that these two sets of patents must necessarily track together. We didn't view it that way. Frankly, in that time frame of February of 2015, we were between a rock and a hard place in the sense that we have two patents that we believe are infringed, they don't have a lot of life left on them, and we have a choice of whether to proceed with the belief that these two patents deserve to go forward. But if we don't go forward with these, then we have to reassess and somehow figure out a way to bring these. Couldn't you have filed a separate lawsuit? We could have filed potentially a separate lawsuit, but our calculus was that time was of the essence, and that our best chance to get these patents addressed, the infringement of these patents addressed, was through the existing litigation, including the fact that so much of the discovery, and really this was the basis for bringing these additional patents into the case in the first place, so much of the discovery, although not directed to the additional patents, there was a lot of commonality there, which we felt was going to have to be completely redone if we filed a separate complaint in a different case. And so our view was that because time was of such an essence, we were caught in a position of having to accept the situation and hope that it was going to recognize that the discovery benefits were the real reason for having these patents in the case, but it wasn't a reason to necessarily have them track completely through that one case, and that there were good reasons to have the additional patents proceed forward, even if the original patents remained state, because there was still some discovery that we could take on them. Was the discovery that had occurred so far, was it just document exchange, other depositions? No, no, Your Honor. Murata had produced over 2 million pages, most of it in Japanese, most of it had to be reviewed. Daifuku produced over 300,000 pages, also most of it in Japanese, all of that had to be reviewed. We had to review that before depositions. We took 36 depositions in Los Angeles. We spent two weeks in Osaka for depositions of Daifuku. We had inventor depositions in Boston. Millions of dollars were spent on this case before the case was state. We were going to be in a position of having to repeat a lot of the things that were common to these patents, in terms of the background of the technology, in terms of the parties involved, in terms of the industry, even though these patents are directed to different aspects of an automated material handling system. They're different patents. Do patent litigators rely on the discovery and different things that have occurred in other legal proceedings involving those same parties? Your Honor, there are a lot of limitations on our ability to necessarily do that. As a matter of fact, we have been hampered by our ability to use any discovery from this case in any other proceeding, including the IPRs. It was far from a certain answer that we were going to be able to use discovery from this ongoing case in any other proceeding. Not to mention the fact that we were going to have to serve a foreign defendant all over again, potentially, which would draw out for many months for sure, particularly if we had to go through the Hague. We were facing a time crunch and a decision whether to stay the course with respect to this case, or completely start fresh on patents that were already long in the tooth. Let me take you back to your legal argument. Your legal argument is Procter & Gamble controls this case. Procter & Gamble, of course, the case at that moment when the district judge was deciding these various motions in front of him, the case was active. Here, your case, the case is inactive. It was stayed already. To me, that's a potential pivot point. What I'm trying to understand is, is it your position that any time a case has been stayed, and then sometime thereafter, the plaintiff files a motion for a preliminary injunction on one of the patents in the state litigation, that the district court is required to consider that preliminary injunction, even though the case has been stayed? Your Honor, absolutely. So basically what that means is, whenever there's these litigations going on, and these IPRs get granted, and now well over 100 litigations have been stayed to await the outcome of the IPR, the respective IPRs, plaintiffs can undo those stays throughout the country by filing a preliminary injunction motion, thereby forcing the district court to crack open the case and have an evidentiary hearing and do claim construction, take witness testimony and figure out the likelihood of infringement and likelihood of validity or invalidity every single time. What we're saying is that a district court, regardless of whether or not there's a stay, must consider. The preliminary injunction motion, it doesn't have the discretion to say, oh, I've stayed the case, so I'm not going to consider this motion. Preliminary injunction motions are different from other motions. The answer is yes, then. Yes, that under all these hundreds of stayed litigations in light of the thousands of IPRs that have been granted, that plaintiffs can undo all those stays by filing a preliminary injunction motion, thereby taking up a lot of cost, time and resources of the courts and the parties to resolve those pending preliminary injunction motions. Inherent in a preliminary injunction motion is the notion that there is some kind of irreparable harm going on, that there's something that needs to be redressed immediately. It's the very reason why these motions are immediately appealable, interlocutory. That's what sets them apart from other motions. And so what we're saying is that a district court has to consider it, has to at least look at it. If you say, if the court's holding here is that, well, a stay obviates that requirement, then you're saying that 28 U.S.C. 1292A1 is basically not really, doesn't really apply, and that Morata doesn't have any actual interlocutory right of appeal with respect to a motion where there are exigent circumstances that require it to be considered. We're not saying that it's required to be granted. We're saying it needs to be at least considered. So what were the exigent circumstances that came around by July of 2015 that didn't exist, say, in May 2015? You filed your motion to lift the stay in May 2015, but you didn't give any indication that you were going to be, you needed a preliminary injunction right away. You waited, and then you made an indication that you were planning on filing a preliminary injunction, and then you ultimately filed a preliminary injunction. And so I'm trying to figure out what happened all of a sudden. Well, it's not all of a sudden. You have a business, an industry that is not like Apple, Samsung, where you're selling ubiquitous products all over the world. We're talking about our AMHS systems. These are automated material handling systems for the semiconductor manufacturing industry specifically, where these contracts happen once in a while. There aren't that many customers for this. What made it urgent for you is that there was going to be a solicitation for this type of business, and it was a rather big order, and you wanted to capture it. Yes, and we certainly didn't want to be hampered by offers by Daifuku, its sole competitor of infringing products and potentially lose those opportunities. When we become aware of an opportunity and they don't come along all the time, we find out about it, and that's what was the basis for bringing the motion. It was something tangible that we had identified that made the motion relevant and exigent at that time. Okay, I've let you go way over your time, but let's stop here. Let's hear the other side, and when you come back, we'll give you some more time for rebuttal. Thank you. Good morning, Your Honors. Thank you, Your Honor. Jeff Sherwood for the Daifuku Defendants. The issue, as I think I heard a few minutes ago for this court to consider, is whether the district court committed an abuse of discretion in its ruling with respect to these motions, and that would be a clear error of judgment, a decision outside the boundaries of permissible choice, or an error of law. None of those things happened, and, in fact, I didn't even hear that the argument was much consumed with demonstrating that to Your Honors. Well, the point the other side is trying to make is anytime there's a preliminary injunction motion that's been filed, it needs to be considered, and if you look at Procter & Gamble, at least in that particular instance, when there were co-pending motions for preliminary injunction and stay, this court said you've got to consider the motion for preliminary injunction. So I understand that, Your Honor. Thank you. And going straight to P&G, let me just say that I think that the facts in that case are different than the facts in this case. In that case, this court looked specifically at the hearing transcript before the district court, where the district court was asked to consider the harms and declined, and that is not the situation that happened here. Here, the district court made a finding with respect to harms, made a finding that there would be no undue prejudice if the stay continued. And so having determined that there was no... Did the district court consider the exigent circumstances that Murata was citing? Yes, Your Honor. In fact, it did. That was before the district court. Murata filed several pleadings that related to its harm. It first filed an opposition to the original stay motion. Let's go to the decision of the district court where they address the exigent circumstances. So, Your Honor, there is no explicit discussion of that. What I was going to say was that... That's the problem here, isn't it? We have a preliminary injunction, and we don't have a specific discussion or rationale as to why it was denied, other than it was just simply denied. Well, Your Honor, I don't think it was a problem, and let me explain why I don't think it was a problem. The district court made a finding in both the first order and in the second order, and I can refer the court to page A4 in the appendix, where it says near the top of the page, accordingly the court finds, as it previously found, that all four factors militate in favor of a stay. Now, Your Honor is absolutely correct that there's no analysis there. The district court doesn't go through these exigent circumstances. But, in fact, they were set forth in Murata's pleadings, both with respect to its original motion to lift and in its reply. And, in fact, if you make a comparison between the harm that was presented in the PI motion, which was subsequently filed in violation of the stay, because I think Murata got to the point where it felt like it didn't want to wait any longer, you'll see there is no difference in the harm that was presented with respect to the motion to lift the stay and the harm that was presented subsequently in the PI motion. So, in both, they talked about loss of customers and goodwill. They talked about upcoming opportunities. They talked about impact on personnel and hiring. All of those things were before the district court when it made this finding, Your Honor. And the other thing I want to be sure to point out here is what is the record on these market opportunities that Mr. Bannier, counsel for Murata, testifies that he and his law firm learned of opportunities at some point earlier on for their client. That is not the kind of immediate exigent circumstance under which a court should grant a preliminary injunction. So, what happened was the district court had all of this before it. It saw that these were not the circumstances that would constitute an irreparable harm, that there was no undue prejudice, that there was no need to take the motion up at the time. And so what he says at the end is, again, on A4, because the court has now declined to lift the stay, meaning he didn't find an opportunity to find any undue prejudice, the motion for the PI is denied, without prejudice to be renewed at a later date if, and I'm adding here parenthetically, if they come forward and they show something that is an exigent circumstance, that is an undue prejudice, that is an irreparable harm, that would justify the court moving forward. That's not what happened in P&G. In P&G, and I looked at the hearing transcript that this court cited to, P&G tried to argue harm. And the judge said, no, no, no, I don't want to hear it. This is just going to be about scheduling and simplifying issues and so forth. It's not in the court's opinion, but it is in the transcript, and that's where this court went when it decided P&G. What it says in P&G is you can't refuse to consider harm at all. I agree with that. I'm not taking a contrary position with respect to that. But if the harm is not there, does the district court then have to go through the four-factor injunction analysis and do all the balancing? It does not. I think I understood you to be saying that the only thing in the record about this opportunity was counsel's declaration. Wasn't there a declaration from an employee as well? There is a declaration from Mr. Van Orman as well, Your Honor, that says the same thing. In other words, it says we think there might be something coming up within the next year, and I can give the court a record. That's not just counsel's opinion. There's an employee declaration, right? Well, they're two separate opportunities, actually. And it was this declaration by counsel that is what was connected to the PI motion. Got it. I thought that this other declaration, that's at page 1899, I thought that that was actually attached to the preliminary injunction motion. Am I wrong about that? I think they were both attached, Your Honor. I'm sorry if I misstated that. So my point here is that if one of those first two elements in the PI analysis is missing, likelihood of success on the merits or lack of irreparable harm, then that's enough for a district court to go no farther in terms of deciding whether a PI motion needs to be decided. You have cases that say that. And so does the Tenth Circuit. Well, what is the daylight, do you think, if any, between a finding that there's no undue prejudice and then what is required for determining that there is or is not irreparable harm? Because you seem to be, obviously, marrying the two together. If you find there's no undue prejudice, you necessarily find there's no irreparable harm. And in kind of backing your way into concluding that the district court appropriately denied the preliminary injunction motion. But as just a legal matter, what's the difference between those two concepts? Well, Your Honor, that's not something that I would say we have found a lot of cases to flesh out. The case that we cited in our brief, Morey v. Sato, relates to that undue prejudice is a lower standard than irreparable harm. I'm not here to really try to figure out which one is low. Well, I am saying that undue prejudice is not a higher standard than irreparable harm. On the record in this case, though, if we look at the harm and the prejudice they argued, it's all the same. It is an irreparable harm type analysis that they're making here. They criticize us for conflating undue prejudice and irreparable harm. But if you look at their papers... Show me in the court's decision where the court made an irreparable harm analysis. Your Honor, I have. But I've showed you... I'm looking at it again at A4, and it seems to me that where the court says, the court agrees that the motion for a P.I. was filed prematurely while this section was state. Although plaintiffs had filed a motion to lift the stay, the court had not decided the motion. Because the court has now decided to decline to lift the stay, the P.I. motion is denied. Looks like it says, you filed a P.I. motion prematurely because there was a stay in the proceedings. I hadn't ruled on the stay, but I am now. And I'm going to decline the motion to lift the stay. And because of that, I'm going to decline the preliminary injunction. There's no preliminary injunction analysis there. Your Honor, I agree with everything you've said, but I would like to add to it. But I need to review the district court decision. I understand, Your Honor. And I can't review a district court decision on preliminary injunction if the court doesn't say anything other than the fact that you filed this untimely. Your Honor, what he says is on A4, he finds, as he previously found, all four factors. And if we go back and look at his earlier decision, which starts on A6, he lists those. Specifically on A8, one of those is undue prejudice. And what he says on A4 is, I find those four factors listed on A8 all militate against a stay. And he does not do more textual analysis. The court's absolutely right with respect to that. But your cases say that it's not simply a matter of him having to list every reason in support of his decision. If the record shows that the ruling was correct and can be sustained and was not an abuse of discretion, then it must be affirmed. In ACS Hospital, for example, the court wrote... And that would be our job, as far as I see it, to look at the court's decision with respect to the preliminary injunction and determine whether there was an abuse of discretion or not. But when the district court has no analysis, has no findings for a preliminary injunction, other than to say it was untimely filed, then I don't see how we can do our job at that point. Well, I don't like to repeat myself, so I apologize for that. I can't offer anything more than what he says in these two orders, which is, no undue prejudice, therefore they can't meet... This is my addition. This is what the record reveals to me, at least. No undue prejudice, therefore there can't be any irreparable harm, therefore I don't have to take up the PI motion. And so the logic is I read A4 is the first thing he does is he says near the top of the page, accordingly, this is after he's gone through some analysis, but not on all... Well, sir, it would have been good had the court even stated the logical steps that you're arguing now. I mean, that would have been better than what they did. I'm not sure that would have been enough. But you're saying something that the court did not. I am adding something to his opinion, yes. You're right, Your Honor. No question. We can all see what the words are on the page. I just want to make sure my point is clearly understood, which is he did make a finding. He did not elaborate on it, but he did make a finding. And the finding was no undue prejudice. And that was sufficient, not an abuse of discretion, for him to have then decided, and the record, I believe, fully supports this, that Murata could not, therefore, make a showing of irreparable harm. And when you look at the evidence here of harm that they have presented to you, both in the motion to lift and also in the PI, you'll see there is no bid request from any potential customer. There is no evidence that even if a bid request was issued, that our client, Daifuku, would be invited to submit a response. There is no evidence that Daifuku would decide to submit a response. One of the arguments that Murata has made here is something they call lock-in, which basically says if you're the incumbent supplier, it's very unlikely that you are going to get a contract to provide more systems or new systems to a customer. Well, Murata is the incumbent supplier for one of the two customers at issue here, and neither of these companies are the incumbent for the other. So Daifuku might very well not even decide to participate if there was a bidding process, because according to Murata, it has such a poor chance of winning the bid. And then even if Daifuku did decide to bid, we don't know what product it would submit. This is a very customizable system, as Mr. Ben-Mir explained to the court. So we need to know what are the details, what are the things that are going to be in this system, and how do they line up with a claim in one of the assertive patents. We don't know. You've got claim charts in the briefs. They all relate to systems sold to another customer in the past. They have nothing to do with the issues that are before the court regarding harm. Would you say that given the grant of all the IPRs, there's a substantial issue of validity with respect to the claims? Well, I would say that yes, Your Honor. I mean, we know after the district court has made its rulings that now all the claims but one are under review. So I certainly would agree with that. I'm not trying to suggest that the district court knew how the PTAB was going to decide the petitions for the second or the last two patents. I think my time has expired. So unless there's anything more, I'll sit down. Thank you. Thank you. I'll restore your time to three minutes. How much? Three. Three. First, to address Your Honor's point, a question about the situation where we might have this rash of preliminary injunction motions. The P&G case has been on the books for eight years, and there hasn't been a rash of such motions, of such appeals to this court from state cases. And that's because the situation with the preliminary injunction motions are different, where there's typically an exigent circumstance. They're very unusual, and it's not fair to expect that we're going to see that kind of thing happen. On the point relating to whether the relationship between undue prejudice and irreparable harm, counsel suggests that there's not a lot of cases that relate the two. And, in fact, there aren't any that suggest that one is simply a lower standard of another in terms of an assessment of harm. Irreparable harm is often about the redressability of a harm caused by the infringement of another party. Undue prejudice has concerns about the tactical advantage or disadvantage gained by one party or another in the context of litigation. Certainly there can be underlying facts that are common to them, but to suggest that the analysis is the same, and so if you don't meet one, you don't meet the other, is simply incorrect. But more fundamentally, we do feel that the district court abused its discretion when it denied the stay-lift motion. Doesn't undue prejudice necessarily incorporate notions of measuring out the potential harm to the patent owner? It can, but what we know for sure is that the district court actually never reached those issues because it expressly refused to consider Murata's motion. We know that. It says in his own order he's not going to consider it. So whatever issues we raise there were not something of concern, clearly, expressly by the order itself. And again, as a matter concerning the undue prejudice issue, we do view the district court's decision as an abuse of discretion. Murata presented facts regarding the nature of the industry and the relationship of the parties, the situation being a sole competitor situation where you have patents that are soon to expire and you have a stay that is effectively destroying the right of exclusivity of one of the parties as a result of the stay. That very much dramatically shifts the balance of power between the two parties in the context of the case. That is, by definition, undue prejudice. In fact, as we cite in ADA Solutions, the prejudice in this kind of situation should be presumed. On the flip side, you have Daifuku not really presenting any arguments for why there's no undue prejudice to Murata. They argue about the prejudice that he'll suffer if the stay is lifted. They argue incorrectly on the facts about the harm being something that's of its own making, but they never actually contest the facts as to why there is undue prejudice to Murata. The circumstances of the industry, the relationship of the parties, the expiration of the patents, none of that's contested. So in our view, the district court had no discretion to determine that there was no undue prejudice and it abused its discretion when it decided not to lift the stay. The matter was stayed initially on September 12, 2015. So months later, you filed your motion for the injunction or motion to lift the stay. Not quite. We filed the motion. The case was stayed on February 12, 2015. Yes. Initially, yes. Initially. Yes. So when you filed your motion to lift the stay and commensurate with that, your preliminary injunction, that was during a time when the case had been stayed. Correct. Is it an abuse of discretion for the district court to not consider a motion for a preliminary injunction on the basis that the proceedings have been stayed? Yes, it is. It's an abuse of discretion? It's an abuse of discretion for a court to refuse to consider a preliminary. No. Sorry? Okay. Yes. Unequivocally. And it's because of the nature of a preliminary injunction motion, its immediate ability, and the exigency and emergency that's attached to them that makes them different from any other kind of motion. It's different from a summary judgment motion. What I'm wondering is shouldn't you first have to pass through the threshold of succeeding on a motion to lift a stay and then thereby reactivating the case before the court should be considering the merits of a preliminary injunction motion? No, you don't. A stay is not a reason to eviscerate effectively what would be a right of appeal if this court were to hold that way. Well, I guess the point would be that a lot of the good reasons why you would prevail on a preliminary injunction motion would be included in a motion to lift the stay. But if you're not considering, if you're not actually even going to consider the arguments presented in a motion for preliminary injunction relating to, for example, irreparable harm, then you're basically just not even paying attention to them in favor of considerations that may be appropriate for considering whether or not to stay a case, like burden of litigation and other convenience factors, that simply shouldn't supersede the potential for irreparable harm that is underlying a preliminary injunction motion. Suppose you hadn't requested to lift the stay. I'm sorry? Suppose you had not requested to lift the stay. Then just months later you file a motion for preliminary injunction. Would the district court abuse its discretion in refusing to consider the preliminary injunction on the basis that the proceedings have been stayed? I think the answer to that is yes, Your Honor. I think when you're presented with a court... Why is that? Because a preliminary injunction proceeding has some special character? Yes. Because a preliminary injunction, inherent in a preliminary injunction motion, is the argument that there is something exigent, there is an emergency situation here, that needs to be addressed immediately, which is the very reason why it's immediately appealable, because clearly the passage of time is going to potentially prevent it from being something that can actually be redressed later on. The stay is presuming that there can't be anything exigent involved. It's a preordaining. A stay is essentially preordaining that there can't be any emergencies, there can't be any exigencies. That can't be the rule. It has to be the case that if you're presented a preliminary injunction motion, which is inherently presenting some kind of urgency, that it must be considered, whether or not a case is stayed or not. Okay. Can you give us your concluding thoughts? Well, I just want to emphasize that since the decision of the district court, we do have the institution decision of the PTAB, and we do have clarity that at least one of the claims, Claim 3 of the 184 patent, is free and clear of any PTAB proceeding. We should be able to proceed on that claim. In our view, we should proceed on all of the claims and allow the district court to consider Daifuku's invalidity arguments, our infringement arguments, and proceed to consideration of the preliminary injunction on all these claims and to a trial of the merits of this case. All right. Thank you very much, Counsel. Thank you. Thank you.